UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

JOEL MARCEL CARTER,
                    Plaintiff,

vs.                                             CIVIL NO:2:07-CV-13311

RICUMSTRICT, et. al.                            DISTRICT JUDGE ANNA DIGGS TAYLOR
                                                MAGISTRATE JUDGE STEVEN D. PEPE

                    Defendant(s).
_____/


## REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. # 33) AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. # 24):

On August 9, 2007, Plaintiff, Joel Marcel Carter, an inmate at the Standish Maximum

Correctional Facility ("SMF"), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983

against fourteen Defendants,[1] five of whom were originally identified as "John Does" (Dkt. # 1).[2][3]

On January 7, 2008, Defendants filed a motion for summary judgment (Dkt. # 24). On May 12,

2008, Plaintiff filed a motion for partial summary judgment against Defendants Mahoney, Szappen,

and Bailey (Dkt. # 33), and Defendants Responded to this motion on June 2, 2008 (Dkt. # 34). On

November 29, 2007, all pretrial matters were referred to the undersigned (Dkt. # 14). For the

reasons discussed below, **IT IS RECOMMENDED** that Defendants' motion for summary judgment be

_____

[1]  The nine Defendants named by Plaintiff are as follows: Ricumstrict, Krajnik, Huges (likely referring to Sergeant Hughes), Smith, Piche, Bailey, Mohoney (likely Mahoney), Szappen, and Stothard (Dkt. # 1).

[2]  The five "John Does" were identified as: Andy Charbonneau, Rodney Buhl, Kim Suchodolski, Tim Blain, Matthew Aldrich and Walter Smith (Dkt. # 26).

[3]  On November 26, 2007, waiver of service was returned unexecuted as to Defendants Mohoney and Stothard (Dkts. ## 12, 13).

**GRANTED** and that Plaintiff's motion for partial summary judgment be **DENIED**.

## I.     Background:

Plaintiff's Complaint alleges Defendants' deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment as well as a denial of equal protection, due process, conspiracy and a common law claim of assault and battery (Dkt. # 1). All Defendants were employed by the Michigan Department of Corrections ("MDOC") at SMF. Plaintiff seeks:

> (1) an injunction ordering MDOC to (a) stop unlawful restriction of Plaintiff's mattress due to his Multiple Sclerosis and (b) expunge major misconduct sanctions and unlawful disciplinary proceeding from his inmate file;
> (2) $20,000 in compensatory damages for the 11 day restriction of Plaintiff's mattress due to the physical and emotional injuries incurred;
> (3) $20,000 in compensatory damages for the physical and emotional damages associate with the use of chemical agents against Plaintiff as well as his being dragged down the hall;
> (4) $10,000 in compensatory damages for due process violations;
> (5) $10,000 in punitive damages against Defendants Ricumstrict, Krajnik, Bailey, Smith, Huges, Piche and Does 1-5 each as well as $2500 in punitive damages against Defendants Mahoney, Bailey and Szappen; and
> (6) such other relief as Plaintiff is entitled.

*Id*. at 11.

Plaintiff suffers from Multiple Sclerosis which affects his ability to walk. On September 7, 2006, Plaintiff received a major misconduct report for sexual misconduct and a mattress restriction. *Id*. at 2. According to MDOC records from February 26, 2003, until November 1, 2007, Plaintiff received 68 major misconduct reports for sexual misconduct (Dkt. # 24, Ex. G). It appears that Plaintiff's *modus operandi* was to drag his 60 pound mattress from his bed, over to his cell door, and fold it so that he could stand upon the mattress to gain sufficient height to masturbate in the prison cell window. *See Id*. at Ex. A (providing some of the major misconduct reports detailing Plaintiff's behavior).

Plaintiff claims that on September 8, 2006, he was called into Defendant Krajnik's office where he spoke with Defendants Krajnik and Ricumstrict (Dkt. # 1, p. 3). At that time, Defendant Ricumstrict notified Plaintiff that "he would not be placed on mattress restriction due to Plaintiff's medical condition." *Id.* On October 5, 2006, Officer Kedron issued Plaintiff a major misconduct report for sexual misconduct and a mattress restriction which was approved by Defendant Ricumstrict. As a result, Plaintiff claims that he "slept on the concrete with a blanket to lay on and folded clothes for a pillow, as aches and pain and constant muscle spasms ran through his body." *Id.*

On November 18, 2006, Plaintiff received another sexual misconduct report and a mattress restriction. On November 20, 2006, Plaintiff claimed that he had an attack where his left side "was burning intensively, then he los[t] feeling of his left side." *Id.* Plaintiff was taken to the hospital, and upon his return sat "all night on the concrete slab." On the next day,[4] Plaintiff's mattress was returned to him.

On November 21, 2006, flooding was occurring in the prison due to inmates flushing their clothing down the toilet. *Id.* at 4. As a result of the flooding, prison staff were pulling each prisoner from their cell to inventory their clothing. Prior to inventorying Plaintiff's cell, Officer Stoddard[5] ordered Plaintiff to "cuff up" – a requirement he be cuffed prior to checking his cell. *Id.* Plaintiff stated that he was weak, and if he made it to the door he would not be able to walk given that he would be handcuffed with his hands behind his back. Officer Stoddard gave Plaintiff a "direct order

---

[4] Plaintiff refers to this incident as the next day, but lists it as 11/20/06 the same day as the prior incident noted in his Complaint.

[5] It appears that Defendant Stoddard is also referred to as Defendant Stothard elsewhere in Plaintiff's Complaint. *See,* Docket # 1 comparing and contrasting pages 2 and 4.

to 'cuff up,'" but Plaintiff remained in bed, silent and by so doing admitted that "he thereby refused." *Id.* Plaintiff received a major misconduct ticket for disobeying a direct order, but claims that he did not have to comply because the order posed "a significant risk or serious physical injury." *Id*.

Plaintiff claims that Defendant Krajnik approached Plaintiff's door stating that Plaintiff was "going to come out of that cell." *Id*. Plaintiff asked Defendant Krajnik to get health care because he could not walk. Lieutenant Tipton approach Plaintiff's cell, asked Plaintiff to come out, and asked Plaintiff to turn onto his stomach so he could be handcuffed. *Id*. at 4, 5. Plaintiff agreed to turn onto his stomach but only if health care staff was present. Plaintiff claims that Defendant Krajnik wanted Plaintiff to walk out of his cell so that "he wouldn't be held liable" for taking Plaintiff's mattress. After this interaction, five hours passed before Plaintiff was again approached by MDOC staff about his need to leave the cell. At that time, Defendants Smith, Huges and the five John Does approached Plaintiff's cell, ordered him to approach the door to be handcuffed or risk being subdued by the use of chemical agents. *Id*. at 5.

Plaintiff objected stating that he had "M.S. and can't walk without help." *Id*. At that time, Defendant Smith gave Defendant Huges permission to gas and rush Plaintiff. Defendant Huges sprayed Plaintiff with chemical agents, MDOC staff entered the cell, grabbed Plaintiff, took him down the hall and placed him in the shower. *Id*. at 6.

Plaintiff claims that when he asked Defendant Bailey why she let chemical agents be used against Plaintiff given his health condition, Defendant Bailey noted that Plaintiff was not paralyzed and thus was able to have walked to his cell door to be handcuffed. After showering, Plaintiff was moved to a new cell so that his old cell could be cleaned. Plaintiff requested a new mattress, but

instead was given a thin mattress because Defendant Huges wanted "to make the plaintiff suffer in agony while sleeping, because the concrete could be felt right through it." *Id*. at 7.

On November 27, 2006, Defendant Mahoney, the hearing investigator, came to Plaintiff's cell providing him with a Hearing and Witness Statement form. *Id*. Plaintiff filled out the form authorizing the release of his medical files and requesting information from other witnesses who saw his removal from his cell on November 21, 2006. Plaintiff claims that Defendant Mahoney knew that he could not walk.

On December 12, 2006, Defendant Szappen held a hearing on the major misconduct ticket issued when Plaintiff refused to be cuffed and leave his cell under his own power. Plaintiff claimed that the hearing investigator, Defendant Mahoney, was "un-reliable and failed to conduct an investigation." *Id*. Plaintiff sought to have the hearing postponed so that witness statements and medical records could be obtained. Plaintiff claimed that he was victim of a conspiracy and was being denied due process. *Id*. at 8. A witness, speaking over the phone and purporting to be Physician's Assistant Noble, allegedly stated that Plaintiff could walk on the date in question: November 21, 2007. Plaintiff claims that had his medical records been available they would have shown that he could not walk.

## II.     Legal Standard:

## A.     Standard for Liability Under § 1983

In order to demonstrate liability under 42 U.S.C. § 1983, a plaintiff must establish that: 1) he was deprived of a right secured by the federal Constitution or laws of the United States; 2) the deprivation was caused by a person acting under color of state law; and 3) the deprivation occurred without due process of the law." *O'Brien v. City of Grand Rapids*, 23 F.3d 990, 995 (6th Cir. 1994)

(citing *Rhodes v. McDannel*, 945 F.2d 117, 119 (6th Cir. 1991), cert. denied, 502 U.S. 1032, 112 S. Ct. 872 (1992)).

**B.     Summary Judgment**

Under Fed. R. Civ. P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact.  The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts.  *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).   In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party.  *See Duchon v. Cajon Co.*, 791 F.2d 43, 46 (6th Cir. 1986); *Bouldis v. United States Suzuki Motor Corp.*, 711 F.2d 1319 (6th Cir. 1983).   But as the Supreme Court wrote in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to a judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper

evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment is improper, however, if the non-movant has not been afforded a sufficient opportunity for discovery. *White's Landing Fisheries, Inc. v. Buchholzer,* 29 F.3d 229, 231-32 (6th Cir. 1994), *accord Plott v. General Motors Corp.*, 71 F.3d 1190, 1195 (6th Cir. 1995) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5, 106 S. Ct. 2505, 2511 n. 5, 91 L. Ed. 2d 202 (1986)), *cert. denied,* 517 U.S. 1157, 116 S. Ct. 1546 (1996). Only the exhaustion defense has evidence submitted for Rule 56 consideration.

## C.    Deliberate Indifference

"Deliberate indifference" has been variously defined by the federal courts that have considered prisoners' Eighth Amendment claims, but all agree that it is more than mere negligence and less than actual intent. In *Farmer v. Brennan*, 511 U.S. 825 (1994), the Supreme Court explained the meaning of "deliberate indifference:"

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference*. . . . Eighth Amendment suits against prison officials must satisfy a "subjective" requirement .

511 U.S. at 836-37 (emphasis supplied). *See also Estelle*, 429 U.S. at 105-06 (stating that a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim under the Eighth Amendment); *Sanderfer v. Nichols*, 62 F.3d 151, 154 (6th Cir. 1995) (stating that deliberate indifference is the equivalent of "criminal recklessness, which requires

a subjective showing that the defendant was aware of the risk of harm"); *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) ("Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference.").

Accordingly, even "gross negligence" by prison officials is insufficient to support a deliberate indifference claim. *Ribble v. Lucky*, 817 F. Supp. 653, 655 (E.D. Mich. 1993). As noted in *Estelle*, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106. Delay in access to medical attention can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Hill v. DeKalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (6th Cir. 1994) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir.) (per curiam), *cert. denied*, 496 U.S. 928 (1990)). The Sixth Circuit has stated that:

> [w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.

*Westlake*, 537 F.2d at 860-61 n.5.

## III.    Factual Analysis

## A.    Plaintiff's Motion for Partial Summary Judgment (Dkt. # 33)

Other than reiterate some of the facts alleged in his Complaint, Plaintiff has done little to establish that his motion for partial summary judgment against Defendants Szappan, Mahoney and Bailey should be granted. The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002).

In their motion for summary judgment (Dkt. # 24), their reply to Plaintiff's response (Dkt. # 31), and their response to Plaintiff's motion for summary judgment (Dkt. # 33), Defendants present sufficient, specific facts to show that there are material issues of disputed facts. *See Anderson*, 477 U.S. at 252. These facts, of Defendants, are based on prison medical records, hearing and major misconduct reports, statements issued by various Defendants, and legal argument such that the jury could reasonably find for the non-moving party. Accordingly, summary judgment is inappropriate and **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment against Defendants be **DENIED.**

## B.    Defendants' Motion for Summary Judgement (Dkt. # 24)

*1.    Plaintiff's Eighth Amendment Claims*

A. Removal of Plaintiff's Mattress

Plaintiff claims that Defendants Ricumstrict, Krajnik, Smith, Huges and Piche were deliberately indifferent to his medical needs when they removed his mattress from his prison cell (Dkt. # 1, p. 8).

Plaintiff also claims that Defendants' actions caused him to sleep on the concrete, experience pain on the left side of his body, and constituted cruel and unusual punishment in violation of the Eighth Amendment. *Id.* at 9.

In *Estelle*, the Supreme Court concluded that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, which violates the Eighth Amendment. *Estelle*, 429 U.S. at 104. The *Estelle* Court recognized that even in less serious cases, where the prisoner does not experience severe torment or a lingering death, the infliction of unnecessary suffering is inconsistent with standards of decency. *Id.* at 103. Specifically, the

Supreme Court stated: "In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

"The standard enunciated in *Estelle* is two-pronged: '[i]t requires deliberate indifference on the part of the prison officials and it requires the prisoner's medical needs to be serious.' " *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir.1987), quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978). In examining Plaintiff's complaint, it is clear that none of Plaintiff's claims regarding the removal of his mattress meet the standard articulated by *Estelle*.

Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Therefore, prison officials are prohibited from inflicting punishment that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged "must result in the denial of 'the minimal civilized measure of life's necessities.' " *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-601 (6th Cir.1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348. Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

An Eighth Amendment claim has objective and subjective components: (1) a sufficiently grave deprivation and (2) a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825,

834 (1994); *Woods v. LeCureux*, 110 F.3d 1215, 1222 (6th Cir.1997). A prison official cannot be found liable unless the official has acted with deliberate indifference; that is, the official must know of and disregard an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 837; *see also Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991) (deliberate indifference standard applies to all claims challenging conditions of confinement to determine whether defendants acted wantonly).

Plaintiff's mattress restrictions were issued as a result of his 68 major misconduct tickets for his own, admitted sexual misconduct.[6] Actions have consequences, and removal of Plaintiff's mattress was the consequence of his own, repeated misconduct. Temporary removal of Plaintiff's mattress a punishment is a measured and reasonable response based upon a compelling governmental interest to maintain order in its prisons. After his mattress was removed, Plaintiff was provided an "isolation blanket" to sleep on (Dkt. # 24, p. 4). This removal was a temporary, punitive measure for repeated violations of prison policy.

Plaintiff claims that Defendants were told not to remove his mattress due to his health problems, but such a claim is the result of his misreading prison health care records which noted that Plaintiff was "at high risk for mattress restriction . . . suggest not to abuse your mattress and it will not be restricted" (Dkt. # 24, Ex. H).

On these facts, no reasonable fact-finder could conclude that Defendants removal of Plaintiff's mattress for a period of limited duration constituted a sufficiently grave deprivation amounting to "deliberate indifference" or "cruel and unusual punishment." Plaintiff has failed to provide evidence of a sufficiently grave deprivation or a sufficiently culpable state of mind.

---

[6] Plaintiff's repeated major misconduct tickets suggest that Plaintiff does not suffer from an inability to walk. The record suggests Plaintiff was able to walk to his cell door, while carrying his 60 pound mattress, and stand at there at least 68 times.

Accordingly, **IT IS RECOMMENDED** summary judgment be **GRANTED** to Defendants Ricumstrict, Krajnik, Smith, Huges and Piche.

B. Use of Chemical Agents

Plaintiff claims that Defendants Krajnik, Bailey, Smith, Huges and John Does 1-5 were deliberately indifferent to Plaintiff's medical needs when they used chemical agents against him (Dkt. # 1, p. 9). Plaintiff also claims that these Defendants' actions also constituted cruel and unusual punishment as their actions were "shocking, inhumane, and violative of basic decency." *Id*. at 10.

This Circuit has long recognized that prison officials may be required to use limited physical force in order to maintain order and security. *Parrish v. Johnson*, 800 F.2d 600 (6th Cir. 1986) Such an approach requires that judicial analysis of the actions taken by prison officials "must be carefully circumscribed to take into account the nature of the prison setting in which the conduct occurs and to prevent a prison official's conduct from being subjected to unreasonable *post hoc* judicial second-guessing. *Parrish*, 800 F.2d at 605.

In his Complaint, Plaintiff admits that he refused to approach his door to be handcuffed so that his cell could be inspected (Dkt. # 1, p. 4, ¶ 14). Plaintiff claimed that he could not walk even though he had repeatedly walked to his cell door while carrying his mattress and despite the fact that on November 21, 2006, Plaintiff was seen walking to his cell to retrieve his meals as well as standing in his cell earlier that day.

After Plaintiff refused this direct order, MDOC staff prepared to forcibly remove him from his cell. Consistent with MDOC policy, a forced move of Plaintiff was conducted by "staff who have been specifically trained in such techniques." Policy Directive ("PD") 04.05.112(N). The use

of chemical agents was consistent with MDOC policy providing for the use of chemicals when "a prisoner refuses an order from staff to allow restraints to be applied or to exit a cell or room." *Id.* at (P)(5).

Plaintiff's Complaint does not suggest that the use of force and chemical agents resulted in anything more than temporary discomfort. Plaintiff complained of pain on his left side, but such pain was due to his sleeping on concrete rather than on the actions of Defendants Krajnik, Bailey, Smith, Huges and John Does 1-5. Further, prison officials have a compelling governmental interest in searching inmate's cells. Such an interest can justify the measured, controlled and appropriate use of force and chemical agents.

Accordingly, **IT IS RECOMMENDED** that summary judgment be **GRANTED** to Defendants Krajnik, Bailey, Smith, Huges and John Does 1-5.

## C. Pendant Assault and Battery Claim

Plaintiff claims that Defendants Krajnik, Bailey, Smith, Huges and John Does 1-5 committed common law assault and battery when they used chemical agents and force to remove him from his cell (Dkt. # 1, p. 10). A district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). *See Musson Theatrical, Inc v Federal Express Corp*, 89 F3d 1244, 1254-55 (6th Cir. 1996) ("When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."). **IT IS RECOMMENDED** that this Court decline supplemental jurisdiction over Plaintiff's state law assault and battery claim and that these state assault claims be **DISMISSED** without prejudice.

*2. Plaintiff's Conspiracy Claims*

Plaintiff makes two conspiracy claims. The first, against Defendants Krajnik, Bailey, Smith, Huges and John Does 1-5 claims that these Defendants sought to deny Plaintiff "equal protection of laws because he is a disable person and a negro" (Dkt. # 1, p. 10). The second made similar claims against Defendants Mahoney, Bailey and Szappen. *Id*. at 10-11. To establish a civil conspiracy the plaintiff must prove:

1. an association of two or more persons;
2. an unlawful objective;
3. an agreement, understanding, or "meeting of the minds" regarding the objective and the means of pursuing it;
4. commission of an unlawful act in furtherance of the agreement; and
5. injury resulting therefrom.

4 COA2d 517.

Under Michigan law, "civil conspiracy" is combination of two or more persons, who by some concerted action agree to accomplish criminal or unlawful purpose, or to accomplish lawful purpose by unlawful means. *Kennedy v. R.W.C., Inc.*, 2005 WL 665319 (E.D. Mich. 2005). To state a claim for civil conspiracy under § 1983, plaintiff must make something more than a naked assertion of conspiracy between state actor and private parties; plaintiff must show that defendants acted jointly in concert and that some overt act was done in furtherance of conspiracy which resulted in deprivation of constitutional right. *Shooting Point, L.L.C. v. Cumming*, 243 F. Supp. 2d 536 (E.D. Va. 2003).

Plaintiff's assertions that Defendants engaged in conspiracies to deprive him of his constitutional rights are baseless. Conclusory allegations are not sufficient to support the claim of an equal protection violation. Rather, "there must be a showing of clear and intentional discrimination." *Butcher v. Department of Natural Resources*, 158 Mich. App. 704, 708 (Mich. Ct.

App. 1987). Plaintiff does not allege any specific acts showing a violation of the Equal Protection clause. Accordingly, **IT IS RECOMMENDED** that Plaintiff's claims of an equal protection violation and conspiracy be **DISMISSED**.

*3. Plaintiff's Due Process Claim*s

### 1. Plaintiff's Claim That His Mattress was Taken Without Due Process

Plaintiff alleges that Defendants Smith, Huges and Piche violated his Fourteenth Amendment right to procedural due process when they took his mattress without written notice or a hearing in advance of the mattress' removal (Dkt. # 1, p. 9). "A prisoner's liberty interest, under the Due Process Clause of the Federal Constitution, is limited to freedom from restraint which imposes atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life." CJS PRISONS § 26. *See Sandin* v. Conner, 515 U.S. 472 (1995). The Court in *Sandin* required that the challenged action must impose an "atypical and significant" hardship.

The Supreme Court also noted that:

> although prisoners do not shed all constitutional rights at prison gate, lawful incarceration brings about necessary withdrawal or limitation of many privileges and rights, a retraction justified by considerations underlying penal system . . . Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law.

*Sandin*, 515 U.S. at 485.

Temporary removal of Plaintiff's mattress, as a result of his misconduct involving the mattress, and replacing it with an isolation blanket does not involve atypical discipline for such misconduct. He has no liberty interest in these matters. Despite there being no need to provide Plaintiff with written notice about his mattress restrictions, he did receive notice that he was "at high

risk for mattress restriction...suggest to not abuse your mattress and it will not be restricted" (Dkt. # 24, Ex. H).

Plaintiff, while not possessing a due process liberty interest requiring written notice or a hearing prior to the removal of his mattress, received written notice that his continued misconduct could result in the loss of his mattress. Accordingly, **IT IS RECOMMENDED** that Plaintiff's claim that Defendants Smith, Huges and Piche violated his Fourteenth Amendment due process rights be **DISMISSED**.

### 2. Plaintiff's Claim That His Due Process Rights Were Denied at a Misconduct Hearing

Plaintiff claims that Defendants Mahoney and Szappen denied Plaintiff's due process by restricting his ability to present his defense at his major misconduct hearing (Dkt. # 1, p. 10). Plaintiff's major misconduct ticket was issued after he refused to follow a direct order, and he was later found guilty on that ticket.

Plaintiff requested that Defendants postpone the hearing so that he could obtain witness statements and medical records. *Id.* at 7. Plaintiff sought to have Physician Assistant ("PA") Noble called as a witness. PA Noble was not present, but was called on the phone, during the hearing, by Defendant Szappen who asked if Plaintiff could walk on November 21, 2006.[7] *Id.* at 8.

Plaintiff states that he could not hear the call with PA Noble, and further that if his medical records had been provided it was "likely he would not have been found guilty because it would have verified the plaintiff's admissions of not be able to walk." *Id.* Plaintiff noted that Defendant Szappen relied upon Nurse Bailey's statement and the written report of Mahoney in reaching his

---

[7]Plaintiff listed the date in question as 11/21/07, but clearly meant 2006 and not 2007 as this Complaint was filed prior to 11/21/07.

decision (Dkt. # 33, p. 3, ¶¶ 6-11).

A.     Hearing Officer Szappen is Entitled to Absolute Judicial Immunity:

It is a well established principal that judges are generally absolutely immune from civil suits for money damages. This principle clearly extends to suits filed under § 1983. *Mireles v. Waco*, 502 U.S. 9, 9, 112 S.Ct. 286, 287, 116 L.Ed.2d 9 (1991); *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1872). Absolute judicial immunity applies not only to judges, but also to MDOC prison hearing officers for actions taken in their official capacity as hearing officers. *Shelly v. Johnson*, 849 F.2d 228 (6th Cir. 1988); *Barber v. Overton*, 496 F.3d 449 (6th Cir. 2007).

"Absolute judicial immunity is overcome only in two situations: First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Barnes v. Winchell*, 105 F.3d 1111, 1116 (6th Cir. 1997); *see also Mireles*, 502 U.S. at 11-12, 112 S.Ct. at 288 (internal citations omitted).

In examining the functions normally performed by a judge, courts have found that "paradigmatic judicial acts" are those that involve "resolving disputes between parties who have invoked the jurisdiction of a court." *Forrester v. White*, 484 U.S. 219, 227 (1988) *see also Antoine v. Byers & Anderson, Inc. et al*, 508 U.S. 429, 435-36 (1993) (recognizing that the "touchstone" for judicial immunity has been the "performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights." (internal quotations omitted)).

Hearing Officer Szappen's decision was reached at a formal hearing, and was based upon

Mahoney's written report and Nurse Bailey's statement. This evidence, in addition to PA Noble's statement provided during the hearing, provided Office Szappen with the information on which he found Plaintiff guilty. This was essentially a judicial act. Accordingly, Officer Szappen is entitled to absolute judicial immunity for these actions taken in his capacity as a hearing officer.

B.    Plaintiff's Claim of a Procedural Due Process Violation On His Misconduct Ticket:

Under Michigan law, a prisoner loses good time credits for the month of his major misconduct disciplinary conviction. M.C.L.A. § 800.33(6). Such loss of good time affects the duration of confinement. Where a judicial determination in favor of an inmate in a § 1983 action "would necessarily imply the invalidity of [the prisoner's] conviction or sentence," that action cannot be brought under §1983 unless the underlying conviction is reversed or otherwise overturned. *Heck v. Humphrey,* 512 U.S. 477, 487 (1994). Such matters can only be challenged by a direct appeal of the misconduct finding or by a *habeas corpus* action not in a civil rights action. This principle also has been applied to inmate disciplinary findings of guilt. *Edwards v. Balisok,* 520 U.S. 641 (1997) (barring use of § 1983 where the challenge to prison procedures would "necessarily imply the invalidity of the punishment imposed.").

Here, if successful on Plaintiff's due process challenge to the misconduct procedures, this Court's ruling in Plaintiff's favor would necessarily imply the invalidity of his guilty finding on his misconduct. Plaintiff has not had his misconduct ticket overturned. Thus, he has no cognizable § 1983 claim regarding those grievances absent showing they were reversed or vacated.

Accordingly, for the reasons discussed above, **IT IS RECOMMENDED** that Plaintiff's claim's that his due process rights were violated be **DENIED**.

**IV.    Conclusion:**

For the reasons previously discussed, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED** and that Defendant's motion for summary judgment be **GRANTED** and Plaintiff's Complaint **BE DISMISSED** in its entirety, and with prejudice except for his state assault claims which should be terminated without prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this report and recommendation. *Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370,1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72(d)(2), a copy of any objections is to be served upon this Magistrate Judge. Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections. A party may file a reply brief within 5 days of service of a response. The reply shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.

**DATED:** July 31, 2008                    s/ Steven D. Pepe
                                            **STEVEN D. PEPE**
                                            **UNITED STATES MAGISTRATE JUDGE**




<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a copy of the foregoing ***Report and Recommendation***  was served on the

attorneys and/or parties of record by electronic means or U.S. Mail on July 31, 2008.


                                            s/ Alissa Greer
                                            Case Manager to Magistrate
                                            Judge Steven D. Pepe
                                            (734) 741-2298